Joseph M.R. Covey (7492) (jcovey@parrbrown.com)
Jeffery A. Balls (12437) (jballs@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone:  (801) 532-7840

*Attorneys for Michael M. Beal, Receiver*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CELTIC BANK CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BLACKVILLE SOLAR II, LLC;<br>RICHARDSON SOLAR, LLC; DIAMOND<br>SOLAR, LLC; EDISON SOLAR, LLC; and<br>C2 USB 2018 HOLDINGS, LLC,<br><br>Defendants. | SECOND REVISED MOTION TO INCUR<br>DEBT AND GRANT "PRIMING LIENS"<br><br><br>Case No. 2:24-cv-00140-HCN-CMR<br><br>Honorable Howard C. Nielson, Jr.<br><br>Magistrate Judge Cecilia M. Romero |

Michael M. Beal, solely in his capacity as court-appointed receiver in the

above-captioned proceeding (the "Receiver"), through his undersigned counsel, hereby files this

Second Revised Motion (the "Revised Motion") seeking a revised order authorizing him to incur

debt to fund the ongoing operations of Blackville Solar II, LLC ("Blackville"), Richardson Solar,

LLC ("Richardson"), Diamond Solar, LLC ("Diamond"), and Edison Solar, LLC ("Edison," and

together with Blackville, Richardson, and Diamond, the "Defendants") and to provide any and all

maintenance, repairs and improvements to Defendants' facilities.  In support of the Revised

Motion, the Receiver respectfully represents as follows, which representations are supported by the Affidavit of Michael Beal, attached hereto as Exhibit A:

BACKGROUND

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

2.    The Receiver was appointed pursuant to that certain Findings, Conclusions, and Order Granting Plaintiff's Motion to Appoint a Receiver (Doc. 106) and Order Appointing Michael M. Beal as Receiver (Doc. 107) entered on August 14, 2024 (collectively, the "Receivership Order").

3.    Pursuant to the Receivership Order, the Receiver has possession and control over all assets and operations of the Defendants (the "Receivership Estate").

4.    The Receiver previously filed a Motion to Incur Debt on October 9, 2024 (the "Original Motion"). *See* Docket No. 110.

5.    After the Receiver filed the Original Motion, Celtic Bank Corporation ("Celtic") informed the Receiver that it wanted different language in the proposed order.

6.    The Receiver submitted a revised proposed order to the Court on October 16, 2024. *See* Docket No. 114.

7.    On October 25, 2024, the Court granted the Original Motion. The Court, however, noted that it revised the proposed order submitted on October 16, 2024 because the Court found "that much of the revised proposed order went beyond the scope of the Motion."

8.    The Receiver now submits additional evidence, and the Revised Motion expands the scope of the relief requested to allow the Court to make the findings contained in the proposed ruling.

<u>RELIEF REQUESTED</u>

9.    After extensive negotiations, Celtic has agreed to extend to Receiver a Revolving Line of Credit with a maximum availability of $2,000,000.00 under a draw down revolving line of credit (the "Receiver Loan").

10.    The terms of the Receiver Loan are set forth on the term sheet attached hereto as <u>Exhibit B</u> and incorporated herein by reference.  Without limitation:

    a.    the Receiver must obtain "entry of an Order in [this action] (the "Receivership Proceeding") approving and authorizing the line of credit, including a 'priming lien' on all assets of the receivership estate;"

    b.    the amount of the Receiver Loan will be "Up to Two Million Dollars ($2,000,000), with advances to be approved by Lender;"

    c.    the Receiver Loan will be a "Draw Down Line of Credit;"

    d.    Advances and use of loan proceeds will be "subject to Lender's approval;"

    e.    Advances and loan proceeds shall be used to "[p]ay Liquidation Expenses," including "administrative expenses of the Receivership Estate," "on-going operating expenses," and "maintenance and repairs;"

    f.    The Receiver Loan shall mature upon the earlier of (i) September 30, 2025, or (ii) sale of the Collateral (including one or all of the Solar Projects);

    g.    The loan shall bear non-default interest at the rate of 12% per annum, on a 365/360 annualized basis;

    h.    Lender shall receive an origination fee of 1.5% (i.e., $30,000);

i.   the Collateral for the Receiver Loan shall be "[a] 'Priming Lien' in first lien position on and against all assets of the Receivership Estate, including all 'Collateral' as defined in the Receivership Order and/or under the prior Loan Documents (as defined in the Receivership Order); and

j.   the Receiver Loan shall be subject to other standard terms and conditions which will be set forth in "definitive and binding loan documents, in form and substance acceptable to Lender and Borrower."

11.    The Receiver requests an order authorizing him to enter into the Receiver Loan and to execute a Revolving Line of Credit Agreement and other loan documents (e.g., promissory note, security agreement, mortgages, account control agreement, etc.) in form and substance acceptable to Celtic and consistent with the terms set forth on the term sheet attached hereto as Exhibit B.

12.    Consistent with the Receivership Order, the Receiver Loan will be subject to the terms of the existing Forbearance Agreements.  Specifically, the definitive and binding loan documents will prohibit Celtic from foreclosing upon the Collateral during the Forbearance Period under the existing Forbearance Agreements.

13.    The Receiver further requests the Receiver Loan will be secured and collateralized as follows:  Celtic shall be granted valid, binding, enforceable, non-avoidable, and automatically perfected security interests and liens (the "New Liens") senior and superior in priority to all other secured and unsecured creditors of the Receivership Estate, upon all property and assets of the Receivership Estate, including the existing Loan Collateral (collectively, "Collateral").  For the avoidance of doubt, Collateral shall include all real and personal property of the Receivership

4

Estate and the Defendants now owned or hereafter acquired and all other property of whatever kind and nature, in each case, that is pledged as collateral under any security document, and all products, proceeds (cash and non-cash), substitutions, and accessions of or to any of the foregoing.

14.    The Receiver further requests the New Liens be first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any of the Collateral.  The New Liens shall secure the Receiver Loan.  The New Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this civil action; and shall be valid and enforceable against the Defendants, the Receivership Estate, and their successors-in-interest, and/or upon the dismissal of this civil action.

15.    The Receiver requests the Order provide that all funds borrowed from Celtic as part of the Receiver Loan shall be administrative expenses of the Receivership Estate, subordinate only to the allowed fees and costs of the Receiver and the Receiver Professionals.

16.    The Receiver requests the Order provide that the Receiver is authorized and empowered to take all actions necessary to implement the relief granted in the Order.

17.    The Receiver requests the Order provide that the Court retains jurisdiction with respect to all matters arising from or related to the implementation of the Order.

BASIS FOR RELIEF REQUESTED

18.    When the Receivership Order was entered and the assets of the Defendants were vested in the Receiver, all property of the Receivership Estate became, and remains, subject to judicial attachment pursuant to the terms and conditions of the Receivership Order.  Stated

another way, the Receivership Estate is in custodia legis. See Wells Fargo Bank, N.A. v. Mesh Suture, Inc., 31 F.4th 1300, 1311 (10th Cir. 2022) (holding that when a court appoints a receiver, the assets of the receivership estate are "in *custodia legis"* and "[i]n the custody of the law ... during [the] pending litigation").

19.    Accordingly, with the express authority of the Court, the Receiver may borrow money and may pledge the assets of the Receivership Estate as collateral. See, e.g., Atl. Tr. Co. v. Chapman, 208 U.S. 360, 371, 28 S. Ct. 406, 409, 52 L. Ed. 528 (1908) ("Ought the receiver, in this case, to have been authorized to burden the property with indebtedness … which should become a first lien? …. These were matters to be determined by the court, in the light of all the circumstances.  It was for the court to say whether the Canal & Irrigation Company should be kept on its feet by moneys borrowed or obtained, under its orders, by the receiver.").

20.    In accordance with paragraph 4(f) of the Receivership Order, subject to Court approval, the Receiver is authorized to use his best business judgment to incur debt for the use or benefit of the Receivership Estate and, with the consent of Celtic, grant liens that prime and supersede all existing liens and security interests against the Receivership Estate.

21.    Specifically, the Receivership Order authorizes the Receiver "subject to further order of the Court approving the Receiver's business judgment, to incur debt for the use or benefit of Receivership Property other than in the ordinary course of business and, further subject to Secured Party's consent, to grant liens that 'prime' and supersede all existing liens and security interests against the Receivership Property," (Receiver Order ¶ 4.f).

22.    The Receivership Order expressly provides:

11.  RECEIVERSHIP LOANS AND ADVANCES.  If the Receivership Estate does not generate revenue following the appointment of the Receiver sufficient to pay the operating expenses and approved charges and expenses of the Receiver and the fees and expenses of any attorneys, accountants, or other professionals employed by the Receiver in accordance with the requirements of this Order, the Receiver may and is hereby authorized to borrow money from Secured Lender and/or other willing lenders in order to pay such expenses….

b.  In the exercise of his reasonable business judgment, the Receiver may borrow funds from Secured Lender and/or other willing lenders for the purpose of paying (i) the administrative expenses of the Receiver and the Receiver Professionals, (ii) Borrowers' reasonable and necessary operating expenses, (iii) costs and expenses to repair the Projects and the Loan Collateral and to restore the Projects to full, or improved, functionality, and (iv) to replace inoperable, damaged, or obsolete equipment.

c.  Any and all loans obtained by the Receiver must be subject to the terms of the applicable Forbearance Agreement(s), and the lender must expressly agree to be bound thereby….

e.  If the Receiver is unable to obtain credit or incur debt on an unsecured basis, or secured by a junior lien, **the court, after expedited notice and opportunity for hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on the Loan Collateral.  Unless Secured Lender consent[s] in writing, the Court will authorize a "priming lien" or "pari passu lien" only if there is adequate protection of the interest of Secured Lender on the Loan Collateral.**  Approval of a "priming lien" or "pari passu lien" requires notice to Secured Lender, and opportunity for hearing.

f.  The Receiver may agree to such interest rates, including both regular and default rates, as the Receiver determines to be commercially reasonable under the circumstances, taking into account (i) general market conditions, (ii) prevailing interest rates for similar commercial loans, (iii) applicable risk factors, (iv) the loan term (or repayment period), and (v) the fact that the lender will be subject to the Forbearance Agreement(s).

g.  All funds that the Receiver borrows from Secured Lender or other lenders shall be deemed administrative expenses of the Receivership Estate, subordinate only to the allowed fees and costs of the Receiver and the Receiver Professionals….

k.  The Court shall hear and consider the Receiver's motion(s) to approve loans, including a loan secured by a "priming lien" or "pari passu lien," on an expedited basis.  Parties-in-interest must file an objection or response within four business days after notice, with such notice to be deemed effective (a) upon the filing of the motion as to (i) any party

represented by counsel of record in this action and (ii) any person upon whom a copy of this Order is served, and (b) as to any other person entitled to notice, upon delivery of notice by e-mail to the person(s) last known email address. If no objection or response is timely filed, the Court may enter an order approving the loan(s) without hearing. If a response or objection is filed, subject to the Court's own convenience and availability, the Court may hear the motion as early as five business days after notice.

(Receiver Order ¶¶ 11 – 11.k (emphasis added).)

23. The situation at hand is somewhat analogous to a bankruptcy case. Although not controlling, section 364(d)(1) of the Bankruptcy Code provides (with "Receiver" substituted for "trustee"):

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the [Receivership] estate that is subject to a lien only if—
>
> (A)  the [Receiver] is unable to obtain such credit otherwise; and
>
> (B)  there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

24. The business judgment standard in bankruptcy cases provides that a court approve a trustee's business judgment unless the decision is a product of bad faith, whim or caprice. See, e.g., Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1047 (4th Cir. Va. 1985), cert. denied, 457 U.S. 1057 (1986).

25. The Receiver's business judgment supports granting the Motion and allowing the Receiver to incur the Receiver Loan.

26. At this time, the Defendants have funds in their bank accounts totaling approximately $435,000. During the summer months, revenues generally exceed expenses,

creating a surplus.  The Receiver anticipates that revenues will decline dramatically for the next two months, resulting in substantial monthly deficits which will eliminate the surplus.

27.    The Receiver has several large expenses coming due such as for operations and maintenance management and asset management, legal fees and Receivers fees.  In addition, the Receiver anticipates that the cost of necessary capital improvements will exceed $1,000,000.

28.    Although the Defendants are still operating and continuing to generate revenues, they are operating at a significantly decreased capability due to maintenance, repairs, and improvements that have long been neglected.

29.    The Receiver Loan is necessary to provide the Receiver with sufficient funds to continue operating the Defendants' facilities, to continue paying the Defendants' monthly operating expenses, and to begin and complete the much needed maintenance, repairs, and improvements that will increase the liquidation value of the Defendants' facilities and will result in the facilities operating at a much greater capacity and generating much greater revenue.

30.    The Receiver has researched debt options on terms better than those offered by Celtic and has found no lenders willing to lend on terms better or similar to the terms offered by Celtic.

31.    The Receiver has been unable to obtain unsecured credit and has been unable to obtain secured credit on terms acceptable to the Receiver secured only by liens that are junior in priority to the existing liens and security interests of Celtic under the existing Loan Documents.

32.    The Receiver is unable to obtain secured credit without granting to Celtic the rights, remedies, privileges, benefits, and protections provided herein, including, without limitation, a first priority lien and security interest in all assets of the Receivership Estate.

33.  The Receiver negotiated the terms of the Receiver Loan in good faith and at arm's length with Celtic.

34.  Pursuant to the Receivership Order, the Receiver Loan will be subject to the terms of the existing Forbearance Agreements, and Celtic will continue to be bound thereby.

35.  As collateral and security for the Receiver Loan, Celtic will be granted the New Liens which are senior and superior in priority to all other secured and unsecured creditors of the Receivership Estate.  For the avoidance of doubt, Collateral shall include all real and personal property of the Receivership Estate and the Defendants now owned or hereafter acquired, and all other property of whatever kind and nature, in each case, that is pledged as collateral under any security document, and all products, proceeds (cash and non-cash), substitutions, and accessions of or to any of the foregoing.

36.  The New Liens created and granted to Celtic will be first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any of the Collateral.  The New Liens shall secure the Receiver Loan.  The New Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this civil action; and shall be valid and enforceable against the Defendants, the Receivership Estate and their successors-in-interest, and/or upon the dismissal of this civil action.

37.  The Receiver has reviewed lien searches conducted with regard to both the real property and personal property of the Receivership Estate.  Those searches did not disclose any lien claimants against the Receivership Estate other than Celtic Bank.  The Receiver is unaware

10

of any creditors that have filed or recorded notices of lien or security interests against Receivership Estate.

38.    As such, no secured creditor will be impacted by the New Liens other than Celtic Bank, which will be receiving the New Liens and is represented by counsel and consents to the New Liens.

39.    In the Receiver's business judgment, the terms of the Receivership Loan are fair, reasonable, and the best available under the circumstances, reflect the Receiver's exercise of prudent business judgment, and are supported by reasonably equivalent value and consideration.

40.    As a result, the Receiver has chosen to enter into the Receiver Loan with Celtic, which he believes is in the best interest of the Receivership Estate and the creditors.

NOTICE

41.    Notice of this Revised Motion has been given to:  (1) Celtic Bank Corporation; (2) each of the Defendants; (3) C2 USB 2018 Holdings, LLC; (4) NAES Corporation f/k/a Bay4 Energy LLC (Bay4), the current Operations and Maintenance contractor for BLACKVILLE SOLAR II, LLC, RICHARDSON SOLAR, LLC, DIAMOND SOLAR, LLC, and EDISON SOLAR, LLC; and (5) any and all other parties that are required to receive notice pursuant to the Receivership Order.  In light of the nature of the relief requested, the Receiver respectfully submits and requests that this Court so find that no further notice of this Revised Motion be required.  Pursuant to the Receivership Order, any objection to this motion must be filed within four business days.

WHEREFORE, the Receiver respectfully requests that the Court enter an order authorizing the Receiver to enter into the Receiver Loan with Celtic and granting such other and further relief as is just and proper.

DATED this 7th day of March, 2025.

PARR BROWN GEE & LOVELESS, P.C.


/s/ *Jeffery A. Balls*
Joseph M.R. Covey
Jeffery A. Balls
*Attorneys for the Receiver*

CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2025 a true and correct copy of the

foregoing SECOND REVISED MOTION TO INCUR DEBT AND GRANT "PRIMING

LIENS" was filed with the Clerk of the Court using the CM/ECF system, which sent electronic

notification to counsel of record and was emailed to the following on March 7, 2025:

Bay4 Energy Services, LLC
Attention:  Dennis Odden
3840 S. Palo Verde Road, Suite 205
Tucson, Arizona  85714

Bay4 Energy Services, LLC
311 N Bayshore Drive
Safety Harbor, Florida  34695

NAES Corporation
Attention:  Billy Wang, SVP Clean Energy Infrastructure
1180 NW Maple Street, Suite 200
Issaquah, Washington  98027

NAES Corporation
Attention:  VP Legal & Compliance
1180 NW Maple Street, Suite 200
Issaquah, Washington  98027

PurEnergy Management Services, LLC
Attention:  John Hanlon
115 Solar Street, Suite 100
Syracuse, New York  13204

/s/ Jeffery A. Balls