IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CELTIC BANK CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BLACKVILLE SOLAR II, LLC;<br>RICHARDSON SOLAR, LLC; DIAMOND<br>SOLAR, LLC; EDISON SOLAR, LLC; and<br>C2 USB 2018 HOLDINGS, LLC,<br><br>Defendants. | ORDER APPROVING<br>REVISED MOTION TO INCUR DEBT<br>AND GRANTING "PRIMING LIENS"<br><br>Case No. 2:24-cv-00140-HCN-CMR<br><br>Honorable Howard C. Nielson, Jr.<br>Magistrate Judge Cecilia M. Romero |

This matter came before the Court on February 25, 2025 at 2:00 p.m. MST for hearing upon the revised motion [Docket No. 126] of Michael M. Beal, solely in his capacity as court-appointed receiver in the above-captioned proceeding (the "Receiver"), for entry of an order authorizing him to incur debt and grant priming liens to fund the ongoing operations of Blackville Solar II, LLC ("Blackville"), Richardson Solar, LLC ("Richardson"), Diamond Solar, LLC ("Diamond"), and Edison Solar, LLC ("Edison") (collectively, the "Defendants") and to provide any and all maintenance, repairs and improvements to Defendants' facilities.  Jeffery A. Balls appeared on behalf of the Receiver.  Matthew M. Boley appeared on behalf of plaintiff Celtic Bank Corporation ("Celtic").  Other counsel and parties-in-interest entered their appearances on the record during the hearing.  Pursuant to the Court's request, the Receiver filed a Second Revised Motion to Incur Debt and Granting "Priming Liens" [Docket No. XXX].

The Receiver has asked the Court to approve and authorize the Receiver to borrow up to Two Million Dollars ($2,000,000) from Celtic Bank Corporation ("Celtic") under a draw down

revolving line of credit (the "Receiver Loan") on the terms and conditions specified in Exhibit A to the Revised Motion [Docket No. 126-2], and under the further terms and conditions under this Order (including the express findings of fact and conclusions of law) (the "Financing Terms").

This Court having considered the Revised Motion, the supporting declarations of the Receiver [Docket Nos. 110-2 and 126-1] (the "Receiver's Declarations"), the statements and arguments of counsel during the hearing on the Revised Motion, the proposed Financing Terms, the relevant provisions of the Order appointing the Receiver [Docket No. 107] (the "Receiver Order") as well as the substantial evidence submitted in support of entry of the Receiver Order, and after considering such other and further matters as the Court deemed appropriate, the Court hereby

FINDS AND CONCLUDES, as follows:

A.    When the Receivership Order was entered and the assets of the Defendants were vested in the Receiver, all property of the Receivership Estate became, and remains, subject to judicial attachment pursuant to the terms and conditions of the Receivership Order.  The property of the Receivership Estate is in *custodia legis*.  See Wells Fargo Bank, N.A. v. Mesh Suture, Inc., 31 F.4th 1300, 1311 (10th Cir. 2022).

B.    Accordingly, with the express authority of the Court, the Receiver may borrow money and may pledge the assets of the Receivership Estate as collateral, including a "priming" lien.  See, e.g., Atl. Tr. Co. v. Chapman, 208 U.S. 360, 371, 28 S. Ct. 406, 409, 52 L. Ed. 528 (1908) (whether "the receiver … [should] be[] authorized to burden the [Receivership Estate's] property with indebtedness … which should become a first lien …. [i]s for the court to say").

2

C.   The Receiver Order expressly authorizes the Receiver "subject to further order of the

Court approving the Receiver's business judgment, to incur debt for the use or benefit of

Receivership Property other than in the ordinary course of business and, further subject to

Secured Party's consent, to grant liens that 'prime' and supersede all existing liens and security

interests against the Receivership Property," (Receiver Order ¶ 4.f).

D.   The Receiver Order expressly provides, in relevant part:

11.   RECEIVERSHIP LOANS AND ADVANCES.  If the Receivership Estate does not generate revenue following the appointment of the Receiver sufficient to pay the operating expenses and approved charges and expenses of the Receiver and the fees and expenses of any attorneys, accountants, or other professionals employed by the Receiver in accordance with the requirements of this Order, the Receiver may and is hereby authorized to borrow money from Secured Lender and/or other willing lenders in order to pay such expenses….

b.   In the exercise of his reasonable business judgment, the Receiver may borrow funds from Secured Lender and/or other willing lenders for the purpose of paying (i) the administrative expenses of the Receiver and the Receiver Professionals, (ii) Borrowers' reasonable and necessary operating expenses, (iii) costs and expenses to repair the Projects and the Loan Collateral and to restore the Projects to full, or improved, functionality, and (iv) to replace inoperable, damaged, or obsolete equipment.

c.   Any and all loans obtained by the Receiver must be subject to the terms of the applicable Forbearance Agreement(s), and the lender must expressly agree to be bound thereby….

e.   If the Receiver is unable to obtain credit or incur debt on an unsecured basis, or secured by a junior lien, the court, after expedited notice and opportunity for hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on the Loan Collateral.  Unless Secured Lender consent[s] in writing, the Court will authorize a "priming lien" or "pari passu lien" only if there is adequate protection of the interest of Secured Lender on the Loan Collateral.  Approval of a "priming lien" or "pari passu lien" requires notice to Secured Lender, and opportunity for hearing.

f.   The Receiver may agree to such interest rates, including both regular and default rates, as the Receiver determines to be commercially reasonable under the circumstances, taking into account (i) general market conditions, (ii) prevailing interest rates for similar commercial loans, (iii) applicable risk

factors, (iv) the loan term (or repayment period), and (v) the fact that the lender will be subject to the Forbearance Agreement(s).

> g.   All funds that the Receiver borrows from Secured Lender or other lenders shall be deemed administrative expenses of the Receivership Estate, subordinate only to the allowed fees and costs of the Receiver and the Receiver Professionals….

> k.   The Court shall hear and consider the Receiver's motion(s) to approve loans, including a loan secured by a "priming lien" or "pari passu lien," on an expedited basis.  Parties-in-interest must file an objection or response within four business days after notice, with such notice to be deemed effective (a) upon the filing of the motion as to (i) any party represented by counsel of record in this action and (ii) any person upon whom a copy of this Order is served, and (b) as to any other person entitled to notice, upon delivery of notice by e-mail to the person(s) last known email address.  If no objection or response is timely filed, the Court may enter an order approving the loan(s) without hearing.  If a response or objection is filed, subject to the Court's own convenience and availability, the Court may hear the motion as early as five business days after notice.

(Receiver Order ¶¶ 11 – 11.k.)

E.   Although not controlling, section 364(d)(1) of the Bankruptcy Code is analogous, which statute provides (with "Receiver" substituted for "trustee"):

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the [Receivership] estate that is subject to a lien only if—
>
> (A) the [Receiver] is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).  Here, the Receiver has presented evidence demonstrating that he is unable to obtain credit without granting the Priming Liens (as defined below) to secure the new Receiver Loan.  Further, Celtic has consented to making the New Liens (as defined below) securing the new Receiver Loan senior to Celtic's existing loans and liens, thereby satisfying the requirement of adequate protection or rendering it moot.

4

F.   Because the Assets of the Receivership Estate are in *custodia legis*, the Court has authority to order that any new liens granted by the Receiver to secure loans extended to the Receiver "prime" any and all existing liens, and are first, prior and superior to any security, mortgage, or collateral interest or lien or claim to any of the Collateral.  See Atl. Tr. Co. v. Chapman, 208 U.S. 360, 371, 28 S. Ct. 406, 409, 52 L. Ed. 528 (1908) (it "[i]s for the court to say" whether "the receiver" may incur "indebtedness … which should become a first lien," or priming lien, on the property of the receivership estate).

G.   As explained in the Receiver's Declarations, the Receiver has determined the Receiver Loan is necessary to pay the ongoing monthly expenses of the Receivership Estate.[1]  In the exercise of the Receiver's prudent and reasonable business judgment, the Receiver has determined that the terms and conditions of the Receiver Loan are fair, reasonable, and the best available under the circumstances, and are supported by reasonably equivalent value and consideration.  The Receiver has demonstrated to the Court's satisfaction that the terms of the Receiver Loan were negotiated in good faith and at arm's length between the Receiver and Celtic.  Based upon the Receiver's Declarations, the Court finds that the requirements of paragraph 11.e of the Receiver Order are satisfied.

H.   As set forth in the Revised Motion and Receiver's Declaration, the Receiver has determined, in exercise of his reasonable business judgment:  (i) that no acceptable financing on more favorable terms from sources other than Celtic under the Receiver Loan is available; (ii) that the Receiver is unable to obtain unsecured credit; (iii) that the Receiver also is unable to

_____

[1] If not otherwise defined herein, capitalized terms shall have the meanings specified in the Receiver Order.

5

obtain secured credit on terms acceptable to the Receiver secured only by liens that are junior in priority to the existing liens and security interests of Celtic under the existing Loan Documents;[2] and (iv) that the Receiver is unable to obtain secured credit without granting to Celtic the rights, remedies, privileges, benefits, and protections provided herein, including, without limitation, a first priority lien and security interest in all assets of the Receivership Estate.

I.    As to the relief requested in the Revised Motion, *i.e.*, the Receiver Loan and the Priming Liens, the Court finds that the Receiver's exercise of business judgment is reasonable.

J.    Good cause has been shown for the relief requested in the Revised Motion and provided in this Order.

WHEREFORE, based upon the foregoing findings and conclusions, it appearing that notice of the Revised Motion and opportunity for hearing on the Revised Motion was appropriate under the circumstances and that no other or further notice with respect to the Revised Motion need be given, after due deliberation, and sufficient cause appearing therefore, it hereby is

ORDERED, as follows:

1.    The Revised Motion shall be, and hereby is, granted.

2.    The Receiver is authorized to enter into the Receiver Loan on the Financing Terms described in the Revised Motion with Celtic Bank Corporation.  Further, to memorialize the Receiver Loan, the Receiver is authorized and directed to sign and deliver to Celtic definitive and binding loan documents, in form and substance acceptable to Celtic and consistent with the Financing Terms (including the terms of this Order) and the Receiver's business judgment (the "Receiver Loan Documents").

---

[2] This reference to existing Loan Documents shall have the meaning specified in the Receiver Order.

3.      The Receiver Loan shall be, and hereby is, subject to the terms of the existing Forbearance Agreement(s),[3] and Celtic continues to be bound thereby.

4.      As collateral and security for the Receiver Loan, subject to the Receiver's execution of Receiver Loan Documents consistent with this Order, the Receiver is authorized to grant to Celtic security interests and liens senior and superior in priority to all other secured and unsecured creditors of the Receivership Estate (the "Priming Liens" or "New Liens"), upon all property and assets of the Receivership Estate, including the existing Loan Collateral[4] (collectively, "Collateral").  For the avoidance of doubt, the Collateral pledged by the Receiver may include all real and personal property of the Receivership Estate and the Defendants now owned or hereafter acquired and all other property of whatever kind and nature, in each case, that is pledged as collateral under any security document, and all products, proceeds (cash and non-cash), substitutions, and accessions of or to any of the foregoing.  Because the Receivership Estate and the Collateral is in *custodia legis*, the Receiver may execute loan documents granting Priming Liens which are automatically perfected via judicial attachment during the pendency of this civil action.

5.      Subject to the Receiver's execution of Receiver Loan Documents consistent with this Order, the Court hereby exercises its authority to declare and order that the liens created and granted to Celtic to secure the Receiver Loan shall "prime" all other liens and security interests, and shall be first, prior and superior to any security, mortgage, or collateral interest or lien or claim to any of the Collateral.  The Court further declares and orders that the New Liens shall not

---

[3] This reference to existing Forbearance Agreements shall have the meaning specified in the Receiver Order.

[4] This reference to existing Loan Collateral shall have the meaning specified in the Receiver Order.

be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this civil action; and shall be enforceable against the Defendants, the Receivership Estates and their successors-in-interest, and/or upon the dismissal of this civil action.

6.    All funds that the Receiver has borrowed from Celtic, or that he borrows from Celtic as part of the Receiver Loan, shall be administrative expenses of the Receivership Estate, subordinate only to the allowed fees and costs of the Receiver and the Receiver Professionals.

7.    The Receiver is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

8.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

DATED this _____ day of March, 2025.

BY THE COURT

_____
Honorable Cecilia M. Romero
United States Magistrate Judge