Joseph M.R. Covey (7492) (jcovey@parrbrown.com)
Jeffery A. Balls (12437) (jballs@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Michael M. Beal, Receiver*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CELTIC BANK CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BLACKVILLE SOLAR II, LLC; RICHARDSON SOLAR, LLC; DIAMOND SOLAR, LLC; EDISON SOLAR, LLC; and C2 USB 2018 HOLDINGS, LLC,<br><br>Defendants. | RECEIVER'S MOTION TO APPROVE THE SALE OF SUBSTANTIALLY ALL ASSETS AND ASSIGN LEASES PURSUANT TO 28 U.S.C. §§ 2001 AND 2002<br><br>Case No. 2:24-cv-00140-HCN-CMR<br><br>Honorable Howard C. Nielson, Jr.<br>Magistrate Judge Cecilia M. Romero |

Pursuant to 28 U.S.C. §§ 2001(a) and 2002 and the Findings, Conclusions, and Order Granting Plaintiff's Motion to Appoint a Receiver (Doc. 106) and Order Appointing Michael M. Beal as Receiver (Doc. 107) entered on August 14, 2024 (collectively, the "Receivership Order"), Michael M. Beal (the "Receiver") hereby files this motion (the "Motion") requesting that the Court authorize him to sell at public auction substantially all property of the Receivership Estate.  A proposed order ("Sale Order") is attached hereto as Exhibit B.

## I. FACTUAL BACKGROUND

1. On August 14, 2024, the Receivership Estate[1] was created by the entry of the Receivership Order. Pursuant to the Receivership Order, the Receiver was appointed, and all assets of Blackville Solar II, LLC ("Blackville"), Richardson Solar, LLC ("Richardson"), Diamond Solar, LLC ("Diamond"), and Edison Solar, LLC ("Edison," and together with Blackville, Richardson, and Diamond, the "Defendants")[2] were placed in the Receiver's control.

2. The Court has directed and authorized the Receiver to do, among other things, the following:

- "to operate and manage the Receivership Estate and the businesses of the [Defendants], including the right to sell Receivership Property in the ordinary course of business…"[3]

- "to collect, control, manage, conserve, and protect Receivership Property. . ."[4]

- "to market the Receivership Property for sale outside the ordinary course of the [Defendants] business, with such sale to close as to the Collateral for each of the Loans…upon entry of order by this Court approving the exercise of Receiver's business judgment…"[5]

- "to preserve, use, sell, lease, license, exchange, collect, or dispose of the Collateral and other Receivership Property . . . "[6]

- "to adopt or reject any executory contract of Borrowers…"

---

[1] Terms capitalized but not otherwise defined herein shall have the same meanings ascribed to them in the Receivership Order.
[2] C2 USB 2018 Holdings, LLC is also a defendant. The Receivership Order granted the Receiver exclusive control over C2's membership interest in each of the Defendants. The Receiver is not asking the Court to authorize him to sell C2's membership interest in the Defendants.
[3] Docket No. 107 at ¶ 4(a).
[4] *Id.* at ¶ 4(c).
[5] *Id.* at ¶ 4(b).
[6] *Id.* at ¶ 4(d).

3.    Prior to the Receivership, the Defendants operated three solar farms in Barnwell County and one in Lexington County, South Carolina (the "Solar Farms").

4.    Since his appointment, the Receiver has continued to operate the Solar Farms and has made substantial repairs to the solar infrastructure located on the Solar Farms.

## II.  PROPERTY TO BE SOLD AT AUCTION

### Description of Property

5.    The Receiver is requesting an order of this Court authorizing him to sell the following assets of the Receivership Estate (the "Property") after public auction.

    a.    Any and all personal property, whether tangible or intangible, owned by the Defendants, including without limitation:

    i.    all contracts and contract rights;

    ii.    all equipment, machinery, and fixtures;

    iii.    all licenses and permits;

    iv.    all trademarks, tradenames, logos, and other materials used by Defendants;

    v.    all of Defendants' books, records, and data; and

    vi.    the entire business of the Defendants.

    b.    All right, title and interest of the Defendants in the real property leases described on Exhibit A attached hereto (collectively, the "Leases"); and

    c.    All right, title and interest of the Defendants in the real property, fixtures, equipment and personal property located upon or appurtenant to the real property described in the Leases.

3

6.    The assets which are excluded from the public sale (the "Excluded Assets") are as follows:

    a.    All cash, funds, and deposit accounts;

    b.    All accounts, payment intangibles, receivables, and rights to payment;

    c.    All rights under policies of insurance;

    d.    All claims and causes of action against Regions Bank and its affiliates, and all claims and causes of action against Bakare 777, LLC, Adejare Bakare and related defendants; and

    e.    C2 USB 2018 Holdings, LLC's membership interest in each of the Defendants.

The Marketing and Sales Process

7.    In late 2024, the Receiver and Celtic Bank began preparation of a "data room."  The data room included all relevant information to allow a potential purchaser to conduct its diligence in determining whether to purchase the Property, and what price to offer.  For example, the data room included the Power Purchase Agreements and Interconnection Agreements with Dominion Energy South Carolina, Inc. ("Dominion"); historical production records; revenue and expense records; equipment specifications; the Leases; and the Agreements for the Purchase and Sale of Renewable Energy Credits.

8.    In January of 2025, the Receiver began marketing the Property for sale to potential purchasers.  First, the Receiver compiled a list of commercial solar operators in South Carolina, North Carolina., and Georgia.  The Receiver eliminated duplicates and unique operators such as municipalities and out of market utilities.  The Receiver also requested names of potential purchasers from Celtic Bank, Carolina Solar Services, Dominion, and other entities.  Ultimately,

the Receiver compiled a list of 53 prospective purchasers.  In January, the Receiver emailed the 53 prospective purchasers to inform them that the Solar Farms were for sale and to gauge their interest in acquiring them.

9.     The Receiver emailed each of the 53 entities a Confidential Information Memorandum ("CIM" or "Teaser") which informed the prospective purchaser that the Solar Farms were for sale and provided basic information regarding their location, size, production and equipment.  As a result of this solicitation, the Receiver entered into numerous non-disclosure or confidentiality agreements ("NDAs") which allowed the prospective purchasers access to the data room.

10.    In March, the Receiver decided to "pause" the marketing and sales effort due to some issues with the inverters at Diamond.  The Receiver planned to repair the inverters prior to restarting the sales process with the expectation that the repaired inverters would substantially increase the value.  Unfortunately, the Receiver was stymied by the inverter OEM's delays and indifference, and the repairs were not completed on a timely basis.

11.    In late June, the Receiver re-commenced the sales effort by sending a revised CIM to all parties who had previously expressed an interest in acquiring the Property, and they were requested to submit bids on or before August 1.  As a result of the January and June Teasers, twenty entities signed NDAs.  The Receiver received seven letters of intent and engaged in discussions with the prospective purchasers.  As a result of these negotiations the Receiver entered into a non-binding term sheet for the sale of the Property.

12.    The potential purchaser has indicated that, in order for it to consummate this transaction, the sale must close in early 2026.

13.    The Receiver has initiated this public sale process so that he can comply with the statutory requirements for a receivership sale of assets and close the sale as requested by the prospective purchaser.  The prospective purchaser identified by the Receiver will appear and bid at the public sale.

14.    On October 23, 2025, the Receiver filed a Motion for Service of Notice of Public Sale by Publication Pursuant to 28 U.S.C. §§ 2001 and 2002 (the "Notice Motion").[7]  The Receiver now files the Motion for approval of the sale itself.

<u>The Assignment of Real Property Leases</u>

15.    Prior to the Receivership, the Defendants entered into Leases for each of the Solar Farms.  The Receiver is informed and believes that the Defendants were current on their obligations under the Leases prior to the Receivership and no landlord has suggested otherwise. The Receiver has communicated with each of the landlords since August 14, 2024, and paid the rent due under the Leases on a timely basis.  The Receiver believes he is not in default under any of the Leases and has not received any notice of default from any of the landlords.

16.    The Receiver requests the Court authorize him to assign the Leases to the Purchaser (as hereinafter defined).  None of the Leases require the Receiver to obtain the consent of the landlord prior to assumption.  In fact, each Lease provides that the Tenant can assign the Lease if the Tenant is not in default at the time of the assignment and the new tenant agrees to be bound by the terms of the Lease.

---

[7] The Court has not yet ruled on the Notice Motion.  The Receiver filed a request to submit the Notice Motion on November 10, 2025.

17.    Although, the Receiver is not required to obtain the landlords' consent to assign the Leases, the Receiver has communicated with each landlord and each landlord has expressed their agreement to consent to the assignment of their Lease provided the Receiver is not in default at the time of the assignment and the Purchaser agrees to abide by the terms of the Lease.

18.    The Receiver requests the Court authorize him to assign the Leases to the Purchaser.

Free and Clear Sale, Sales Costs, Net Sale Proceeds

19.    The Receiver proposes to sell the Property free and clear of all liens, claims and interests therein, with any liens, claims or interests that may exist attaching to the Net Sale Proceeds (defined below)[8].  The Receiver is not waiving any defenses or offsets to any claims made against the Property or the Net Sale Proceeds.

20.    The Receiver anticipates paying at closing the ordinary costs of sale, including market-rate closing costs.  The gross sale proceeds, less the costs of sale and taxes are referred to herein as the "Net Sale Proceeds."

21.    The Receiver will separately account for the Net Sale Proceeds and report to the Court immediately after the sale closes.

22.    A copy of this Motion is being served on all of the relevant taxing authorities and the relevant regulatory authorities.

---

[8] (*Save and except any lien, claim or interest which the purchaser and the lien holder or interest holder expressly agree to be assumed by the purchaser.*)

<u>Best Interests</u>

23.   The Receiver believes that the sale of the Property at public auction on November 24, 2025 with the potential purchaser as a bidder is in the best interests of the Receivership Estate based on the circumstances of this case; specifically, the Receiver has been marketing the Property since January 2025 and received several offers to purchase.  The Receiver believes that the sales price and terms negotiated with the prospective purchaser are fair and reasonable and represent the fair market value of the Property.  Furthermore, the public sale will give all potential purchasers an additional opportunity to outbid the prospective purchaser, thereby assuring that a fair market price is obtained.

<u>Notice</u>

24.   Notice of the public sale as described in the Notice Motion has been published (or will be published) for four consecutive weeks, in the following newspapers regularly published and of general circulation in Barnwell and Lexington Counties:

    (a)   Post and Courier, South Carolina's most widely read newspaper;

    (b)   The State, a newspaper with statewide circulation in South Carolina which is based in Richland County (immediately adjacent to Lexington County); and

    (c)   The Augusta Chronicle, a regional newspaper with circulation in the Barnwell County, South Carolina area.

25.   To provide additional notice of the public sale, the Receiver emailed the Notice Motion with attachments to forty-six potential purchasers on October 24, 2025, and mailed a copy by U.S. postage prepaid to eight additional potential purchasers on October 28, 2025.  In addition, notice of this Motion has been provided to the Defendants, Celtic Bank, landlords,

Dominion, all parties in interest via the Court's electronic filing system, 54 entities which the Receiver has identified as potentially having an interest in the Property, and all parties who have expressed an interest in acquiring the Solar Farms (the "Notice Parties").

26.    Upon the conclusion of the public sale on November 24, 2025, the Receiver will file with the Court a "Notice of Sale Results," stating the purchase price that was obtained at the public sale and identifying the high bidder (the "Purchaser") and other bids received.  This Notice of Sale Results will be served on the Notice Parties, including all potential purchasers who appeared at the public sale.  The Receiver requests that the Court schedule a hearing on this Motion on a day during the week of December 1, 2025, or as soon thereafter as possible so that the sale can close in early 2026.

### III.  APPLICABLE LAW

27.    The Receivership Order, as set forth above, anticipates the relief sought by the Receiver herein and is within the scope of his duties under the Order.

28.    Section 2001(a) of title 28 of the United States Code permits the Receiver to sell property of the Receivership Estate:

> Property in the possession of a receiver or receivers appointed by one or more District Court shall be sold at public sale in the district wherein any such receiver was first appointed, at the Courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such Court directs.  Such sale shall be upon such terms and conditions as the Court directs.

29.    Conducting the public sale at the Barnwell County Courthouse meets the express requirements of the statute because Blackville, Edison, and Richardson are all located in

9

Barnwell County, and Diamond is located nearby in Lexington County, approximately 64 miles away.

30.    Section 2002 of Title 28 of the United States Code requires that notice of such public sale be published, in relevant part:

> once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated.

31.    Publication of the Notice of Sale in the Post and Courier, The State, and The Augusta Chronicle for four weeks, together with the Receiver's solicitation of prospective purchasers, exceeds the standards of the statute and should offer all potential purchasers notice of the public sale and an opportunity to bid.

32.    Sale of the Property on November 24, 2025 at the Barnwell County Courthouse is within the scope of the Receiver's authority under the Receivership Order and 28 U.S.C. §§ 2001(a) and 2002.  The sale is also in the best interest of the Receivership Estate, and the sale serves the Receivership Estate's purposes to "preserve and protect the [Property], and to ensure that the [Property] is not dissipated or damaged" by allowing the Receiver to maximize the value of the Property.[9]

33.    The Court may order a sale of the Property free and clear of liens, claims and interests, provided that parties claiming an interest against the Property are given proper notice. Here, such notice will be provided, and any liens, claims and interests that may ultimately be determined to exist shall attach to the Net Sale Proceeds.

---

[9] *See* Docket No. 106, ¶ V.

10

## IV.  REQUESTED RELIEF

34.   The Receiver requests that the Court schedule a hearing on this Motion for a day during the week of December 1, 2025, or as soon thereafter as possible.

35.   At the conclusion of the public sale, the Receiver will supplement this Motion with the Notice of Sale Results and request the Court authorize the Receiver to sell the Property to the Purchaser and to assign the Leases.

36.   After the hearing, the Receiver requests that the Court enter the proposed Sale Order attached as Exhibit B, authorizing the sale of the Property free and clear of liens, claims and interests.

37.   The Receiver reserves the right to withdraw the Motion if the public sale does not result in sufficient funds to obtain the consent of Celtic Bank, or for any other reason in his business judgment.

DATED this 12th day of November, 2025.

PARR BROWN GEE & LOVELESS


_/s/ Jeffery A. Balls_
Joesph M.R. Covey
Jeffery A. Balls
*Attorneys for Receiver*

11